# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| vs. | **Case No: 16-03092-01-CR-S-RK** |
| **ALBERTO COLINA, JR.,** | |
| Defendant. | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States of America, by and through Timothy A. Garrison, United States Attorney for the Western District of Missouri, and undersigned counsel respectfully submits this response to the defendant's sentencing memorandum in the above-captioned matter, set for a sentencing hearing on May 18, 2018. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that this Court sentence the defendant to a total of 240 months' imprisonment, 120 months on each count to run consecutive to each other, to be followed by a 3-year term of supervised release.

## I. BACKGROUND

On August 23, 2016, the grand jury returned a two-count indictment charging the defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and theft of a firearm in violation of 18 U.S.C. § 924(l). (Doc. 1.) On September 21, 2017, the defendant pleaded guilty, without a plea agreement, to the two-count indictment before United States Magistrate Judge David P. Rush. (Docs. 26-29.) On October 6, 2017, this Court adopted the report and recommendation of the Magistrate Judge and accepted the defendant's plea of guilty. (Doc. 30.) On March 16, 2018, the final presentence investigation report (PSR) was filed. (Doc. 43.)

The defendant filed multiple objections to the PSR, all concerning the unlawful restraint of the victim, E.R., and her two-year-old grandchild, L.H. (PSR Adden.) The defendant objected to any facts in Paragraph 7, which establishes the unlawful restraint of E.R. and L.H. (PSR 3-4.) "Under the advisory Guidelines scheme, courts are required to find sentencing-enhancing facts only by a preponderance of the evidence." *United States v. Lee*, 451 F.3d 914, 917 (8th Cir. 2006); see also *United States v. Alvarez*, 478 F.3d 864, 868 (8th Cir. 2007). The victim E.R. will be present for the sentencing hearing, and she will testify consistently with the facts contained in Paragraph 7. (PSR 3-4.) Those facts will establish that the defendant used a firearm to kidnap or unlawfully restrain E.R. and/or L.H.

Under Missouri law, there are three levels of kidnapping offenses. Kidnapping in the first degree is committed when,

> 1. A person commits the offense of kidnapping in the first degree if he or she unlawfully removes another person without his or her consent from the place where he or she is found or unlawfully confines another person without his or her consent for a substantial period, for the purpose of:
>
> (1) Holding that person for ransom or reward, or for any other act to be performed or not performed for the return or release of that person; or
>
> (2) Using the person as a shield or as a hostage; or
>
> (3) Interfering with the performance of any governmental or political function; or
>
> (4) Facilitating the commission of any felony or flight thereafter; or
>
> (5) Inflicting physical injury on or terrorizing the victim or another.

Mo. Rev. Stat. § 565.110. Kidnapping in the second degree is committed when an individual "knowingly restrains another unlawfully and without consent so as to interfere substantially with his or her liberty and exposes him or her to a substantial risk of serious physical injury." Mo. Rev.

Stat. § 565.120. Kidnapping in the third degree is committed when an individual "knowingly restrains another unlawfully and without consent so as to interfere substantially with his or her liberty." Mo. Rev. Stat. § 565.130.

In the instant case, the defendant forced his way into E.R.'s apartment while holding a rifle. After entering the apartment, the defendant repeatedly struck E.R. in the head and face, and forced E.R. to drink a liquid containing controlled substance(s). The defendant forced E.R. back into the apartment when she tried to reach her balcony to shout for help. While in the apartment, the defendant stole the victim's Glock 19, Ruger rifle, $300, and prescription medication. The defendant kept E.R. and L.H. in the apartment for two-hours, after which time he fled. (PSR 3-4, ¶¶ 7-8.) E.R. suffered a laceration to her scalp, a fracture to her finger, and injury to her ribs. (PSR 4, ¶ 10.) The defendant unlawfully confined E.R. and L.H. for a substantial period of time, without their consent, to both facilitate the felony of stealing and to inflict physical injury on E.R.

Assuming the Government has met its burden by a preponderance of the evidence that the defendant used a firearm to unlawfully restrain E.R. and/or L.H., the defendant's objection to Paragraph 18, applying the cross reference to U.S.S.G. § 2A4.1(a), and the objections to Paragraphs 19 and 20 should be overruled. (PSR 5-6.) The defendant objected to Paragraph 19, which added two levels for use of a dangerous weapon. (PSR Adden at 2; PSR 6.) "A dangerous weapon was used" is defined as a "…firearm was discharged, or a 'firearm' or 'dangerous weapon' was 'otherwise used.'" (U.S.S.G. 2A4.1, *Application Notes* 2.) The defendant used a firearm to strike E.R. and to force his way into the apartment; consequently, a dangerous weapon was used in the commission of the offense. (PSR 3-4, 6, ¶¶ 7, 19.)

The defendant objected to Paragraph 20, which added two levels for vulnerable victim(s). (PSR Adden. at 2; PSR 6.) "Vulnerable victim" is defined as a victim "who is unusually vulnerable

due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." E.R. was 63 years old at the time of the offense and L.H. was two years old. When applying an enhancement under U.S.S.G. § 3A1.1(b)(1), "the sentencing court must still determine whether a victim was ... unusually vulnerable due to age or some other characteristic." *United States v. Anderson*, 349 F.3d 568, 572 (8th Cir. 2003) (quotation omitted). This enhancement "requires a fact-based explanation of why advanced age or some other characteristic made one or more victims 'unusually vulnerable' to the offense conduct, and why the defendant knew or should have known of this unusual vulnerability." *Anderson*, 349 F.3d at 572. Due to their age, both victims were particularly vulnerable to the type of offenses the defendant committed: robbery, unlawful restraint, and assault. Furthermore, the defendant caused E.R. to become impaired by forcing her to drink liquid containing controlled substances. See *United States v. Jones*, 842 F.3d 1077, 1084 (8th Cir. 2016). L.H., due to her age, completely lacked the capacity to prevent, defend, or escape from the defendant's crimes. Additionally, the defendant used a firearm in the perpetration of the offense, creating a further advantage over the victims.

The defendant's objections to Paragraph 23, 27, and 64 are to the final offense level, rather than to any fact or enhancement. (PSR 6, 16.) The Government asks that all of the defendant's objections be overruled.

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)*,* "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007); (citing *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007)). 18 U.S.C. § 3553(a) specifies the factors courts

4

are to consider when imposing a sentence. 18 U.S.C. § 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" identified in § 3553(a)(2), "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175, 197 L. Ed. 2d 490 (2017). The four identified purposes of sentencing are reached by considering the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements, unwarranted sentence disparities among similarly situated defendants, the need to provide restitution to the victims of the offense, and the Sentencing Guidelines. 18 U.S.C. § 3553(a)(1)-(7).

Once a correctly calculated guideline range is determined, the court should afford both parties an opportunity to argue "for whatever sentence they deem appropriate," and "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 596.) In making this determination, the district court should not presume the Guidelines are reasonable, but assess each case upon the facts presented. *Id*. (citing *Gall*, 552 U.S. at 596.) "If the court concludes that a sentence outside of the Guidelines range is warranted, then it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id*. (quoting *Gall*, 552 U.S. at 596.)

### III. DISCUSSION

#### A. Statutory and Guidelines Calculations

The final PSR, filed on March 16, 2018, found an offense level of 35 and a criminal history category of VI. (PSR 16, ¶ 64.) As to each count, the PSR found a statutory maximum term of imprisonment of 10 years, and a statutory maximum of three years' supervised release. (PSR 15,

5

¶ 63.)  With a final Guidelines range of 35 and a criminal history category of VI, the Guidelines imprisonment range is 292 months to 365 months, with the defendant eligible for probation, and a Guideline supervised release term of at least three years.  (PSR 16, ¶¶ 64, 67, 69, 70, 72.)  However, because the statutorily authorized sentence on each count is not more than 10 years, the Guideline range is 240 months.  (PSR 16, ¶ 64.)

      **B.**     <u>**Statutory Sentencing Factors**</u>

           **1.**   <u>**Nature and Circumstances of the Offense**</u>

The nature and circumstances of this case are discussed thoroughly in Paragraphs 5 to 13 of the PSR.  (PSR 3-5.)  The nature and circumstances of the offenses are horrifying.  The defendant started his crime spree on January 5, 2016, by stealing a truck.  The truck, which had been left running by the owner, contained a double barrel rifle.  The next day, a witness reported the defendant for a possible burglary at a residence in Branson, Missouri.  Once law enforcement arrived, the defendant attempted to flee the scene in the stolen truck; however, he rammed the witness's vehicle during his flight, while the witness was inside the vehicle, and then fled on foot. (PSR 3, ¶¶ 5-6.)

The defendant then found his way to an apartment complex where he forced his way into the victim, E.R.'s, apartment at gunpoint.  E.R., who was home alone with her two-year-old granddaughter, L.H., attempted to fight the defendant, only to have him strike her in the face and head butt her.  E.R. tried to get to the balcony of her apartment so that she could shout for help, but the defendant forced her back into the apartment and hit her on the back of the head with the stock of the rifle.  For the next two hours, the defendant terrorized E.R. and ransacked her home. The defendant forced E.R. to drink a liquid containing alprazolam and hydrocodone.  The defendant stole numerous items from E.R., including cash, firearms, and controlled substances.

(PSR 3-4, ¶¶ 7-8.) E.R. was taken to the hospital where she received staples to her scalp due to a laceration, and treatment for a fractured finger and possible fractured rib. Toxicology reports confirmed that E.R. had opiates and benzodiazepines in her blood. (PSR 4, ¶ 10.)

The defendant ended his crime spree by breaking into a church in Springfield, Missouri. A stolen van, belonging to Springfield Pool and Spa, was parked outside the church. The defendant was located inside the church. The defendant refused to comply with law enforcement's commands and had to be tasered. (PSR 6, ¶ 11.)

The nature and circumstances of this defendant's conduct demonstrate both the lack of deterrence from any previous sentence of incarceration and his disrespect for the law and human life. This defendant endangered the lives of multiple individuals and terrorized a grandmother and her two-year-old granddaughter. Nothing surrounding the nature and circumstances of this offense lends towards a downward variance. The Government respectfully recommends a 240-month sentence is appropriate given the nature and circumstances of this case.

### 2. History and Characteristics of the Defendant

In fashioning a "sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider the history and characteristics of the defendant.' " *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009), (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)) (internal quotations omitted). Consequentially, "factors such as a defendant's age, medical condition, prior military service, family obligations, entrepreneurial spirit, etc., can form the bases for a variance even though they would not justify a departure." *Id*. at 830-31. (citing *United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005)).

The defendant is a 35-year-old male with a lengthy criminal history. The defendant scored the highest criminal history category, VI. (PSR 12, ¶ 45.) The defendant's criminal behavior

7

Case 6:16-cr-03092-RK   Document 47   Filed 05/15/18   Page 7 of 11

began at the age of 17 for petit larceny. (PSR 7, ¶ 30.) At the age of 20, the defendant received his first felony conviction for unauthorized use of a motor vehicle. (PSR 7, ¶ 31.) The defendant, while on felony probation, picked-up convictions for counterfeiting, third-degree domestic assault, passing bad checks, traffic violations, and resisting arrest. (PSR 7-8, ¶¶ 32-37.) The defendant next received a conviction for two counts of felony tampering and one count of resisting a lawful detention. The defendant was sentenced to treatment within the Missouri Department of Corrections and then released on probation. (PSR 9, ¶ 38.) The defendant was subsequently convicted for tampering with a motor vehicle and possession of burglary tools. (PSR 10, ¶ 39.) The defendant's behavior while on probation and parole was abysmal. The defendant's probation and parole was revoked after incurring numerous violations: use of controlled substances, new law violations, possession of weapons, failure to report, and absconding. (PSR 9-10, ¶¶ 38-39.)

The defendant reported a positive upbringing with no history of abuse. (PSR 14, ¶ 53.) The defendant has one child, who he does not have custody of or pay child support for. (PSR 14, ¶ 54.) The defendant reported a significant history of substance abuse, including methamphetamine, opiates, benzodiazepines, cocaine, heroin, marijuana, and alcohol. (PSR 14, ¶ 57.) The defendant has attended a number of community treatment programs, as well as the Missouri Department of Corrections outpatient, inpatient, and 120-day institutional treatment programs. (PSR 15, ¶ 58.) The defendant earned his GED; however, he has had a sporadic and unstable employment history. (PSR 15, ¶¶ 59-60.)

The defendant possess little to no factors, as contemplated in *Chase*, to support a downward variance: the defendant is in his 30s, he has abused controlled substances and alcohol for an extensive period of time, he has no prior military service, he has no family obligations, he has no

entrepreneurial spirit as is demonstrated through his poor and sporadic work history, and he has a lengthy criminal history. *Chase*, 560 F.3d at 830.

This is not a case where the community may simply hope the defendant's offense was an aberration from an otherwise stable and productive life, and expect the defendant to re-enter the community successfully. The defendant is a 35-year-old multi-convicted felon, not a young man who is encountering the legal system for the first time. The defendant's history and characteristics are devoid of any demonstration that he has been a successful member of society, and only demonstrates that he is a danger. The Government respectfully recommends a 240-month sentence is appropriate given the history and characteristics of this defendant.

### 3. Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

Based upon the defendant's nature and history, and the characteristics of the offense, a 240-month sentence would reflect the seriousness of the offense, promote respect for the law, and provide punishment that is sufficient, but not greater than necessary. The defendant has continued to engage in criminal behavior after repeated terms of probation, parole, and incarceration. Nothing short of a lengthy period of incarceration will promote respect for the law in this defendant.

### 4. Need to Afford Adequate Deterrence to Criminal Conduct

As previously mentioned, the defendant has continued to engage in a similar pattern of criminal conduct, and a 240-month sentence would be a deterrent to this defendant and those who wish to continue engaging in dangerous activity within the community, while sending a message to others that the behavior will not be tolerated.

### 5. Need to Protect the Public from Further Crimes of the Defendant

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007)). In this case, there is a great need to protect the public from the defendant.

The defendant's criminal history demonstrates that the defendant's level of risk to commit further crimes is very high. The defendant was given the opportunity to rehabilitate himself within the community while on probation and within the department of corrections while incarcerated. The defendant has repeatedly engaged in similar criminal behavior, and has escalated the dangerousness of his criminal activity. A 240-month sentence would protect the public from future crimes of this defendant.

### 6. Need to Provide the Defendant with Needed Educational or vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner

A 240-month sentence is likely to afford the defendant the necessary substance abuse treatment he quite clearly still requires. A 240-month sentence would also afford the defendant the opportunity to receive educational and vocational training to improve his employability upon release.

### 7. Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

A 240-month sentence would avoid unwarranted sentence disparity with those who have similar criminal history and similar conduct. This would take into account defendant's offense conduct and his criminal history.

## IV. CONCLUSION

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, the need to avoid unwarranted disparity in sentences, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

As such, the Government respectfully requests this Court deny the defendant's request for a downward variance, and impose a 240-month sentence of imprisonment to be followed by a three-year term of supervised release. Such a sentence would be consistent with the circumstances of this case.

Respectfully submitted,

Timothy A. Garrison
United States Attorney


*/s/ Ami Harshad Miller*
Ami Harshad Miller
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417)831-4406


## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of May, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Ami Harshad Miller*
Ami Harshad Miller